

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL<br>IRVING CROSS,<br>Petitioner<br><br>v.<br><br>TERRY MCCANN[1],<br>Respondent. | No. 05 C 5692<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Irving Cross petitions this Court under 28 U.S.C. § 2254, arguing that his conviction violates the United States Constitution. For the reasons stated herein, the Court DENIES Cross's petition.

### I. Procedural Background[2]

Chicago police arrested Irving Cross on August 6, 1998 at 4:50 a.m. for the sexual assault of 19-year-old A.S. that allegedly occurred at knife point thirty minutes prior to the arrest. Cross then faced an indictment charging him with multiple counts of aggravated criminal sexual assault, criminal sexual assault, aggravated kidnapping, and kidnapping. Cross claimed that A.S. consented to the sexual contact.

Prior to trial, the state moved to preclude Cross from mentioning or asking any witness about a statement A.S. made to a doctor admitting that "she had been a hooker." The state trial court granted

---

[1] Terry McCann is currently the Warden at the Stateville Correctional Center, where Cross is incarcerated, and is thus the proper respondent in this *habeas* action. *See* Rule 2(a) of the Rules Governing *habeas corpus* cases under 28 U.S.C. § 2254. This court hereby substitutes Terry McCann as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Cross has done nothing to suggest that the Illinois courts' factual findings are incorrect. Consequently, the Court presumes them to be correct and derives the following facts from the Illinois Appellate Court's opinion. *Araujo v. Chandler*, 435 F.3d 678, 682 (2005).

the motion, ruling that the rape shield statute, 725 ILCS 5/115-7, barred the statement and that the allegation regarding A.S.'s prior prostitution was not relevant to whether A.S. consented to sex. The state also moved to prevent Cross from asking about A.S.'s statement to the doctor that "she has used rock cocaine." The state trial court again granted the state's motion, though it granted Cross leave to present evidence (if he had any) that cocaine use on the day of the incident impacted A.S.'s ability to observe and recollect. Finally, the state moved to preclude Cross from mentioning his statement to the police at the time of his arrest, in which he alleges that he gave A.S. $10 to buy crack cocaine, which they smoked together shortly before having consensual sex. The state trial court also granted this motion.

After a November 1999 jury trial, the jury returned a verdict of not guilty on the aggravated kidnapping counts. The jury, however, was unable to reach a verdict on the remaining counts. The state trial court thus declared a mistrial on the remaining counts. The state informed A.S. and her mother that the first trial had ended in a mistrial and that A.S. would need to testify again at the second trial. A.S. indicated that she would testify again, and nothing in the assistant state's attorney's contacts with A.S. in the interim between the two trials indicated that A.S. would refuse to testify in the second trial.

But at a March 20, 2000 status call, the state informed the trial court that it had been unable to locate A.S., its principal witness, and it later moved to present her prior testimony at the second trial. The Illinois Appellate Court's opinion does not make entirely clear precisely when A.S. disappeared. On the one hand, the court reports that the assistant state's attorney learned on March 10 that A.S. had left home "the day before and had not returned." (Resp. Ex. D. at 10). Later, the court reports that an investigator for the state's attorney's office went to A.S.'s mother's home on March 3 in a failed effort

to locate her. (Resp. Ex. D. at 10). These two findings contradict each other, though neither the petitioner nor the respondent calls this Court's attention to the inconsistency. In the end, however, neither party disputes the state court's factual findings regarding the efforts the state undertook to locate A.S.

At the hearing on the state's motion, the state presented three witnesses: Mary Ember, an investigator for the state's attorney's office, Allen Jaglowski, a Chicago police detective, and Claudia Morales, a victim-witness advocate. All three had attempted, throughout March 2000, to locate A.S. Ember spoke with A.S.'s mother, A.S.'s brother, and A.S.'s father (who did not live with A.S.'s mother). None of the three knew where A.S. was, and A.S.'s mother told Ember that A.S. was "very fearful and very concerned" about testifying again. Ember also repeatedly inquired at the medical examiner's office, "public health," the Cook County Hospital, the Cook County jail, the Illinois Department of Corrections, the Department of Public Aid, the Illinois Secretary of State, and the Immigration Department. Despite her inquiries, Ember was not able to locate A.S.

Jaglowski visited A.S.'s mother's home approximately every three days at different times of the day. Jaglowski also visited A.S.'s father's home. Like Ember, Jaglowski searched public data sources for appearances by A.S. Jaglowski investigated the medical examiner's office and the Department of Corrections. Finally, Jaglowski went to a friend of A.S., who lived in Waukegan, and spoke with the friend's mother, who informed him that she had not seen A.S. in several months and that A.S. was not staying with her or her son. On the morning of the hearing, Jaglowski made a final attempt to find A.S. at her mother's home, and A.S.'s mother told him that A.S. had "called her about two weeks" ago and that she had told A.S. that police were looking for her. A.S.'s mother reported to

Jaglowski that A.S. had told her that "she was afraid and would not return to the city." A.S.'s mother could not provide Jaglowski a method of contacting A.S.

Morales learned from A.S.'s mother that she might be with an ex-boyfriend in Waukegan, but Morales was unable to locate A.S. there.[3] A.S.'s mother also informed Morales that A.S. had enrolled in cosmetology school, but had not attended in some time.

The state trial court ruled that A.S. had made it impossible for the sate to locate her and that she did not want to be found. The state court further ruled that despite A.S.'s vanishing act, the state made "superhuman efforts" to locate her, which demonstrated good faith. Consequently, the state trial court allowed the state's attorney to employ a reader to read A.S.'s testimony from the first trial into the record at the second trial. The jury convicted Cross on two counts of sexual assault, though returned a verdict of not guilty on two counts of aggravated sexual assault.

Cross raised several issues in his direct appeal. Among these issues, Cross argued that the trial court erred in allowing the state to employ a reader to replicate A.S.'s testimony and that it erred in preventing him from mentioning A.S.'s statement to the doctor regarding her prior prostitution and crack cocaine use. The state appellate court noted that whether the state has demonstrated good-faith and reasonable diligence must be made "on a case-by-case basis after careful review of the facts and circumstances." (Resp. Ex. D at 48). The state appellate court held that the state had demonstrated that A.S. was unavailable, that it had demonstrated good faith efforts to locate and produce A.S., and that Cross had an adequate opportunity to cross-examine her at the initial trial. The Illinois Supreme

---

[3] The state appellate court's opinion does not discuss whether the "ex-boyfriend" in Waukegan and the "old friend" in Waukegan might have been same person. Neither the respondent nor the petitioner seems to have explored this detail, and the Court will draw no inferences from it.

4

Court denied Cross's petition for leave to appeal and the United States Supreme Court denied to issue a writ of *certiorari*.

Cross then filed this *habeas* petition, raising three claims. Cross first argues that the state court's findings that A.S. was unavailable and that the state had made good-faith efforts to produce her are an unreasonable application of Supreme Court precedent and violate his Sixth Amendment confrontation rights. Cross next argues that the state court's application of the rape-shield statute to bar evidence of her statements relating to prostitution violate his constitutional right to present a defense. Cross finally argues that the presentation and misuse of A.S.'s testimony violate his Sixth Amendment confrontation rights and also violate due process.

## II. Procedural Default

In order to raise a constitutional challenge to a state court conviction and sentence in a federal *habeas corpus* proceeding, a petitioner seeking *habeas corpus* relief must have fully and adequately presented his challenge to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In so doing, a petitioner must place both operative facts and controlling legal principles before the state court. *Badelle v. Correll*, 452 F.3d 648, 661 (7th Cir.2006). Moreover, a petitioner must pursue a discretionary appeal to the state's highest court, in this case the Illinois Supreme Court, to avoid procedural default barring federal *habeas corpus* review. *Boerckel*, 526 U.S. at 845; *Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir.2002). In other words, a *habeas corpus* petitioner must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845.

In addition, federal courts may not review constitutional claims where the state court decision relies upon an adequate and independent state procedural ground. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir.2002). For example, waiver is an adequate and independent ground under state law that can preclude federal *habeas* review. *Harris v. Reed*, 489 U.S. 255, 258, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

In the event of a procedural default, a petitioner can overcome the bar to federal *habeas* review if he can demonstrate: a) cause for the default and prejudice resulting from the constitutional errors or b) a fundamental miscarriage in justice, which in a non-capital case exists where the constitutional violation probably has resulted in the conviction of one who is actually innocent. *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). To demonstrate cause, the petitioner must show that some factor external to the defense impeded his ability to comply with the state procedure. *Guest v. McCann*, 474 F.3d 926, 930 (2007).

The Respondent argues that Cross defaulted his third claim by failing to present it to the Illinois Supreme Court in his petition for leave to appeal. The Respondent notes that Cross made two Sixth Amendment arguments to the Illinois Appellate Court: 1) that the trial court's ruling on A.S.'s unavailability and the state's good-faith efforts to produce her violated his Sixth Amendment rights; and 2) even if the trial court's ruling on A.S.'s unavailability and the state's efforts did not violate his Sixth Amendment rights, the use of a reader to present an unavailable witness's prior testimony did. (See Resp. Ex. A at 38-51). In particular, Cross called to the Illinois Appellate Court's attention the reader's use of inflection to establish a false credibility and demeanor that A.S. lacked and the inability of the second jury to evaluate A.S.'s credibility and demeanor. The Respondent argues, however, that

in his petition for leave to appeal to the Supreme Court, Cross complained only of the trial court's ruling regarding A.S.'s unavailability and the state's efforts.

In response, Cross suggests that he did present the claim in his petition for leave to appeal, pointing to two specific passages in the petition. First, Cross argues that the opening sentence alerts the Illinois Supreme Court to the claim concerning the use of reader to present an unavailable witness's prior testimony. There Cross states that "[this] petition raises the violations of . . . the Sixth Amendment right to confrontation when the trial court compels a defendant to testify in a front of a jury . . . and, simultaneously, authorizes the State to forego live testimony from the sole accuser and alleged victim." (Resp. Ex. E at 1). Second, Cross points to the opening sentence of the argument itself. There, he states that the "Court should address and find that no substitute for the complainant's live testimony was constitutionally or statutorily permissible, where the State, having obtained no benefit from the complainant's demeanor at the hung jury . . . did not attempt in good faith to secure the complainant's reluctant but available testimony for the second trial, and where the second jury was prevented from evaluating the demeanor and the arrest record of the missing accuser." (Resp. Ex. E at 14). Cross goes on to discuss the problems created by the trial court's decision to allow the State to employ reader to present A.S.'s prior testimony. (Resp. Ex. E at 15).

Although Cross presented the first and third claims of his *habeas* petition as a single claim before the Illinois Supreme Court, all of the arguments that he makes here were presented to both the Illinois Appellate Court and the Illinois Supreme Court. The Court therefore holds that he has not defaulted his third claim.

III. Discussion

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) sets forth the standard under which federal courts review *habeas* claims. 28 U.S.C. § 2254(d). Under the AEDPA, a court may grant a *habeas corpus* petition only where the state court's judgment is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1); *Simonson v. Hepp*, 549 F.3d 1101, 1105 (7th Cir. 2008). A state court decision is "contrary to" Supreme Court precedent if it applies a rule that conflicts with that precedent or reaches a different result on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal principle but unreasonably applies it to the facts of the case before it. *Id.* This requires more than a showing that the state court decision is incorrect; it must be unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

A. A.S.'s Unavailability and the State's Efforts to Locate Her

The Confrontation Clause of the Sixth Amendment guarantees the right of the accused to "be confronted with the witnesses against him." U.S. Const. Amendment VI. The United States Supreme Court, however, has held that the Sixth Amendment confrontation clause permits the admission of certain hearsay statements, including the former testimony of an unavailable declarant, against a defendant despite the defendant's inability to confront the declarant at trial. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).[4]

---

[4] The Supreme Court has recently modified the standard set forth in *Barber* and *Roberts*. See *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed. Wd 177 (2004). The Supreme Court announced *Crawford* after Cross filed this *habeas* petition and did not indicate

8

*Barber* holds that a witness is not "unavailable" unless the government demonstrate that it has made a good-faith effort to obtain a witness's presence at trial. *Barber*, 390 U.S. at 724-25, 88 S.Ct. at 1322. *Roberts* clarifies that the question of whether the government has undertaken a good-faith effort is one of reasonableness. *Roberts*, 488 U.S. at 74-75, 100 S.Ct. at 2543. The law does not require the government to undertake futile acts, and so where there is no possibility that affirmative measures might procure the witness, "'good faith' demands nothing of the prosecution." *Id.*

Cross argues that the state court failed to consider the "totality of the circumstances" when determining that A.S. was unavailable. In particular, Cross argues that the state court should have considered A.S.'s demeanor during her initial testimony, the voluntary nature of A.S.'s absence, and the seriousness of the charges Cross faced to require the state to meet a higher burden in order to demonstrate a good-faith effort. With regard to the state's effort, Cross points to two failures that demonstrate the state's failure to make a reasonable effort to obtain A.S.'s testimony. First, Cross argues that the state's failure to subpoena A.S., in light of her hesitancy to testify, demonstrates its effort in obtaining A.S.'s testimony was not in good-faith. Second, Cross argues that the state's search for A.S., in light of the proceeding factors, was not sufficiently extensive to constitute a good-faith effort. The Court disagrees.

The Illinois Appellate Court noted that the admission of the prior testimony of an unavailable witness poses confrontation clause problems, but that these problems may be overcome with a proper demonstration of unavailability. Although the state court did not cite to Supreme Court precedent, it articulated the standard set forth in *Barber* and *Roberts*. The state court observed that the party seeking

---

that district courts were to apply its holding retroactively. *See Bintz v. Bertrand*, 403 F.3d 859, 865-67 (7th Cir. 2005). Thus, for the purposes of this Court's review of Cross's petition, it must apply the standard set forth in *Barber* and *Roberts*.

admission of prior testimony must demonstrate that the witness is unavailable to testify, that it made a reasonably diligent, good-faith effort to produce the witness, and that the opposing party had an adequate opportunity to cross-examine the witness at the prior hearing.[5] The state court further noted that whether the state has made a good-faith effort must be determined on a case-by-case basis after a review of the facts and circumstances. Contrary to Cross's argument, the state articulated the proper standard.

The state appellate court then proceeded to discuss the state's efforts. First, the court dispensed with the notion that merely because A.S. was the victim in a sexual assault proceeding that her prior testimony would be inadmissable. The court discussed the fact that A.S.'s demeanor could not be discerned from the transcript of her prior testimony, but held that despite these concerns her prior testimony still could be admissible if the state had demonstrated that A.S. was, in fact, unavailable and that it had made a good-faith effort to produce her for the second trial. Cross points to nothing that demonstrates that the state appellate court's holding was an unreasonable application of Supreme Court precedent.

Cross argues that the state should have been compelled to keep A.S. under subpoena in order to demonstrate good faith. The state appellate court rejected this argument, and its holding is not an unreasonable application of Supreme Court precedent. Cross points to *Berger v. California* in support. 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed. 2d 508 (1969). But *Berger* did not hold that state officials must issue subpoena if they have doubt that the witness may later refuse to testify. *Berger*, 393 U.S. at 314-15. In *Berger*, the Court merely held that *Barber* should be given retroactive application. *Id.* Instead,

---

[5] Indeed, the Illinois Appellate Court set forth the standard as modified by *Crawford*, which requires an adequate opportunity to cross-examine.

Courts have consistently rejected the argument that the Confrontation Clause requires prosecutors to issue subpoena or take other proactive measures when a witness appears to be hesitant to testify at trial. *See Lowery v. Anderson*, 225 F.3d 833, 840 (7th Cir. 2000) (*superseded by statute on other grounds as stated in Corcoran v. Buss*, 551 F.3d 703 (7th Cir. 2008) (declining to impose a rule on prosecution to threaten reluctant witness who invoked Fifth Amendment right with prosecution prior to finding of unavailability); *Lor v. Jenkins*, 2006 WL 1153778, * 2 (7th Cir. Apr. 6, 2006) (holding that prosecutor not required to detain or monitor a witness who expressed hesitancy to testify in order to demonstrate good-faith); *Gonzales v. Scully*, 578 F. Supp. 1063, 1071 (S.D.N.Y 1984) (declining to find that good-faith required prosecutor to prevent witness from becoming unavailable). Moreover, A.S. testified despite her fear at least once and thereafter told prosecutors that she was willing to testify a second time. Therefore, given A.S.'s demonstrated willingness to testify, the state had no apparent reason to keep her under subpoena. Clearly, the state court's decision does not lie well outside the boundaries of permissible differences of opinion.

Cross also argues that the state took insufficient measures to locate A.S. once it learned of her absence, complaining both about the length of its search and the procedures it employed. The state appellate court described the efforts the state undertook to locate A.S., including numerous contacts with her mother and father, a trip to Waukegan to visit the home of a friend she had been known to stay with, searches of relevant state and county databases, the use of two investigative employees and a detective. Cross argues that the state appellate court's conclusion is an unreasonable application of Supreme Court precedent because the state could have done more.

Investigators could always investigate other leads, but the Constitution does not require the state to pursue increasingly improbable leads in perpetuity. It requires reasonableness. The state undertook

significant efforts to locate A.S., despite her declared intention not to return to the city and her refusal to inform even her mother of her whereabouts. It sent two employees to family member's and friends' homes over a course of weeks. It scanned public records in an effort to locate A.S. And it asked the police to assist in their search, but the police search was also unsuccessful. Courts have found comparable endeavors to demonstrate good-faith. *See, e.g., Lor,* 2006 WL 1153778 at *2 (collecting cases); *Flournoy v. McKune,* 2008 WL 467015, *4-5 (10th Cir. Feb. 20, 2008); (*James v. Yarbrough,* 2007 WL 1492888, * 1 (9th Cir. May 21, 2007). Cross cannot demonstrate that the Illinois Appellate Court's decision regarding the intensity of the state's search lies so far out of the mainstream of judicial opinions that it is unreasonable.

Finally, Cross argues that because A.S.'s absence was voluntary the state court should have found that she was not unavailable. In support, Cross points to *Motes v. United States* and *Garcia-Martinez v. City & County of Denver,* among others. Cross's reliance again is misplaced. In *Motes,* the government intended to rely upon the testimony of a co-defendant. 178 U.S. 458, 20 S.Ct. 993 (1900). The witness, William Robert Taylor, was in the custody of the government, and supposedly held in jail without bail after pleading guilty. *Id.* Somehow, prior to trial, a prosecuting official decided to allow another witness to take custody of Taylor and allow him to stay the night before the trial in a hotel. *Id.* Miraculously, Taylor showed up at the courthouse the day of the trial, but just before the trial was to begin, he went on the lam. *Id. Motes* concerns a factual pattern so remote from the one of the present case that it is not instructive in the least. *Garcia-Martinez* is similarly uninstructive. *Garcia-Martinez* concerns a plaintiff who intentionally left the jurisdiction and then attempted to present his own deposition testimony in place of live testimony. 392 F.3d 1187 (10th Cir. 2004). The court's refusal to allow a plaintiff to make an end run around procedural rules does not

speak to the state's inability to locate one of its witnesses. In fact, contrary to Cross's argument, courts have treated a witness's evasive behavior as a factor *in favor* of unavailability, rather than against it. *See Ewing v. Winans*, 749 F.2d 607, 611-12 (10th Cir. 1984).

The Court holds that the state court's conclusion that the state exercised good-faith in its efforts to locate A.S. was not an unreasonable application of Supreme Court precedent.

B. Rape-Shield Statute

Cross argues that the Illinois court's application of the state's rape-shield statute violates his Sixth Amendment rights, citing *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed. 2d 513 (1988). The Sixth Amendment, however, does not establish an absolute right to present favorable witnesses. *Hammer v. Karlen*, 342 F.3d 807, 811 (7th Cir. 2003) (citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed. 2d 347 (1974), *Olden v. Kentucy*, 488 U.S. 227, 109 S. Ct. 480, 102 L.Ed. 2d 513 (1988), and *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). Insofar as the Confrontation Clause and the right to compulsory process is concerned, trial judges retain wide latitude to impose reasonable limits upon defense counsel's cross-examination or presentation of favorable witnesses. *Dunlap v. Hepp*, 436 F.3d 739, 741-42 (7th Cir. 2006); *Hammer*, 342 F.3d at 811. Thus, all the Constitution requires is that courts "give earnest consideration to the possibility that excluding evidence under a rape shield law may interfere unduly with the defendant's opportunity to present a defense of innocence." *Pack v. Page*, 147 F.3d 586, 589 (7th Cir. 1998); *see also Davis v. Hulick*, 553 F. Supp. 2d 993 (N.D. Ill. 2008).

The Illinois Appellate Court did precisely that. Although the court did not identify the Supreme Court precedent, it recognized the potential of Illinois's rape-shield statute would interfere with Cross's right to present a defense. It then reasoned that A.S.'s *prior* prostitution was not highly probative with

regard to the question of whether A.S. engaged in prostitution (and therefore possibly consented) to sex on the date of the incident. The court employed similar reasoning with regard to A.S.'s statement concerning drug use. Moreover, the court reasoned that A.S.'s statements did not tend to demonstrate unique or distinctive conduct: nothing suggested A.S. exchanged drugs for sex in the past and instead her statements revealed only that she had used drugs and had been a prostitute. The court also noted that nothing prevented Cross from presenting his defense that the sex was consensual through his own testimony, but that he chose not to do so. It is clear that the Illinois court carefully weighed Cross's argument regarding A.S.'s prostitution, concluded that it was not so probative that the rape-shield statute interfered with his right to present a defense, and therefore applied the plain language of the statute. The Constitution does not require more. *Pack*, 147 F.3d at 589.

In short, the Illinois court addressed the right issue and arrived at a reasonable conclusion.

C.    Presentation and Misuse of A.S.'s Testimony

Cross's final argument merits little discussion. Cross seems to argue that the circumstances surrounding the admission of Cross's deposition testimony are so unreasonable and untrustworthy that even if the state had made a good-faith effort to locate her, it should have been excluded. Cross suggests that the fact that A.S.'s demeanor during her initial testimony was so untrustworthy that, given the fact that she was the state's principle witness, due process required that the state court prevent the prosecutor from reading her testimony into the record at the second trial. The Supreme Court consistently has upheld the principle that the prior testimony of a witness is admissible in subsequent court proceedings if the witness is unavailable and subject to cross-examination at the prior proceeding. No Supreme Court precedent requires additionally that a trial court find that a witness testified credibly at the first proceeding. Neither *Barber* nor *Crawford* carve out exceptions to this general principle.

Therefore, Cross cannot demonstrate that the Illinois court's refusal to bar A.S.'s testimony based upon an alleged lack of credibility is an unreasonable application of Supreme Court precedent.

The Court DENIES Thurmond's petition for a writ of *habeas corpus*. IT IS SO ORDERED.

2/10/09
Dated

Hon. William J. Hibbler
United States District Court